IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DORLEAN D. A., | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 19-CV-228-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|   Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Dorlean D. A. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.  General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

2

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 58-year-old female, protectively applied for Title II disability benefits on April 28, 2016 and protectively applied for Title XVI disability benefits on May 3, 2016, alleging in both applications a disability onset date of November 7, 2014. R. 13, 199-236. Plaintiff's claims for benefits were denied initially on September 26, 2016, and on reconsideration on November 29, 2016. R. 94-117, 76-93, 118-119. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on March 22, 2018. R. 29-71. The ALJ issued a decision on April 12, 2018, denying benefits and finding Plaintiff not disabled because she was able to perform her past relevant work as a Production Assembler. R. 13-23. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

Plaintiff met the insured requirements for Title II purposes through June 30, 2018. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date

of November 7, 2014.[1]  R. 16.  At step two, the ALJ found that Plaintiff had the severe impairments of history of osteoarthritis/tendinitis of the right rotator cuff status post repair; depression; and anxiety.  R. 16.  He additionally found that Plaintiff's history of sciatic was non-severe.  *Id.*  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 16-17.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitation in the functional areas of understanding, remembering, or applying information; interacting with others, concentrating, persisting, or maintaining pace; and mild limitation in the functional area of adapting or managing oneself.  R. 17.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's son's third-party statement, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "less than a full range of light work" as follows:

> [T]he claimant is able to lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally.  The claimant is able to sit for up to 6 hours in an 8-hour day.  The claimant is able to stand and/or walk up to 6 hours in an 8-hour workday.  She is able to frequently climb ramps or stairs, stoop, kneel or crouch.  She is able to occasionally climb ladders, ropes, scaffolds, or crawl.  The claimant is able to perform simple and some complex tasks with routine supervision.  She is able to frequently interact with supervisors and co-workers.  She is also able to occasionally interact with the general public.

R. 17.  Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform past relevant work as a Production Assembler, both as actually and generally performed.  R. 22-23.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 68.  Accordingly, the ALJ concluded Plaintiff was not disabled.

---

[1] The stray reference to November 7, 2015, is a scrivener's error. The ALJ references the correct year in every other reference of the decision.

4

**III.   Issues**

Plaintiff raises four allegations of error on appeal: (1) the ALJ's RFC is not supported by substantial evidence; (2) the ALJ committed legal error at step four; (3) the ALJ failed to follow testimony from the VE; and (4) the decision was rendered by an ALJ whose appointment was invalid at the time she rendered her decision. ECF No. 13 at 4.

**IV.   Analysis**

**A.   RFC is Supported by Substantial Evidence**

Plaintiff contends that substantial evidence does not support the ALJ's RFC. Plaintiff argues that the ALJ failed to link her "Light RFC" to specific evidence in the record, and contends that the ALJ's RFC findings are "not based on medical evidence that is contained in the record." ECF No. 13 at 10. Plaintiff further argues that her treating surgeon for a rotator cuff repair, Antoine Jabbour, M.D., placed Plaintiff under a five-pound lifting restriction which the ALJ failed to adopt. *Id.* at 11. Plaintiff argues the "absence of evidence is not evidence" in this case, claiming generally that the ALJ should have consulted a medical advisor to assist in determining Plaintiff's RFC. Plaintiff's main support for her RFC complaints are that "she is unable to perform work on a sustained basis and for 8 hours in a[n] eight-hour workday," that she suffers from insomnia and must nap during the day, and that she is limited due to "pain and limited mobility after her right shoulder rotator cuff surgery." ECF No. 13 at 10-11.

The Court finds the ALJ's RFC findings are supported by substantial evidence. Plaintiff repeatedly faults the ALJ for finding a "light" RFC, but the ALJ found that Plaintiff retained the RFC to perform "less than a full range of light work" with additional restrictions. R. 17. Plaintiff's argument that the ALJ failed to link the RFC to substantial evidence is inaccurate. For example, the ALJ noted that, although Plaintiff claimed her back pain was diagnosed as sciatica by an MRI, the record contained no lumbar spine MRI, and the visit in question reflected no MRI was

5

necessary or ordered.[2] R. 19. The ALJ further discussed Dr. Jabbour's five-pound lifting restriction, imposed in 2012, after Plaintiff's right rotator cuff surgery. *Id.* The ALJ noted that during the relevant period, which began November 7, 2014, Plaintiff's medical evidence showed "minimal evidence of right shoulder dysfunction," and there was "little to no evidence that a five-pound restriction from July 2012 was permanent. In fact, the restriction was provided in a note to work." *Id.* The ALJ noted that Dr. Jabbour's submitted records indicated that Plaintiff would soon be discharged from his care.[3]

Further, the ALJ's decision thoroughly discussed Plaintiff's medical records. The ALJ accorded only some weight to the state agency consultants who opined that Plaintiff had no severe impairments. Instead, the ALJ stated that the "longitudinal medical evidence does show that [Plaintiff] required little to no treatment for right shoulder complaints after rotator cuff repair in 2012." R. 21. However, given Plaintiff's "history of right rotator cuff repair," the ALJ found "that osteoarthritis/tendinitis right rotator cuff, status post repair is a severe impairment." R. 21. The ALJ then linked her RFC findings to that impairment. *Id.* The ALJ noted medical evidence showing Plaintiff retained a full range of motion in her right shoulder, negative straight leg raise testing, and many reports of Plaintiff's pain being well-managed by medications. *See* R. 19-21. It is clear by reading the ALJ's decision that she thoroughly considered Plaintiff's impairments and linked her RFC findings to substantial evidence.

---

[2] Notably, Plaintiff does not contest the ALJ's consistency findings, and any argument relying solely on Plaintiff's subjective complaints is waived. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("We will consider and discuss only those … contentions that have been adequately briefed for our review."). Further, the ALJ's consistency findings are sound.

[3] The ALJ held the record open for two weeks for Plaintiff to submit additional records, but Plaintiff failed to timely submit additional treatment records from Dr. Jabbour. Plaintiff did submit additional records from Dr. Jabbour one day after the ALJ issued her opinion. Those records are contained in the transcript but were not considered by the ALJ. The records are further support for the ALJ's position as they show Dr. Jabbour issued Plaintiff a work release to full duties with no restrictions on September 6, 2012. *See* R. 73.

Plaintiff also argues the RFC is not supported because medical records showed a need to rest during the day and difficulty being around people. But the ALJ reasonably discounted Plaintiff's testimony based upon the medical evidence of mild symptoms, the effectiveness of treatment, and the fact that Plaintiff did not frequently pursue treatment. R. 17-22. *See* 20 C.F.R. §§ 404.1529 (c)(3)(iv), (c)(4) (evaluation of symptoms). The ALJ was not obligated to incorporate unsupported limitations into the RFC. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

**B.     ALJ Did Not Commit Legal Error at Step Four**

Plaintiff argues that the ALJ "failed to follow the law" at step four of the sequential evaluation process. Specifically, Plaintiff argues the ALJ (1) failed to make adequate findings that the Production Assembler job was in fact past relevant work, and (2) failed to follow the analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996).

At step four, it is the claimant's burden to prove she cannot return to either her particular former job or the job as generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b)(2) (indicating a claimant is not disabled if she can perform past relevant work "either as the claimant actually performed it or as generally performed in the national economy"); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Andrade*, 985 F.2d at 1051. "Past relevant work" is defined as the claimant's ability to perform either (1) the "actual functional demands and job duties of a particular past relevant job"; or (2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993) (quoting SSR 82-61) (quotation marks omitted); 20 C.F.R. § 404.1560(b)(1) (definition of past relevant work). The burden of proving disability remains with the claimant at step four; however, the ALJ has a duty "of inquiry and factual development." *Henrie*, 13 F.3d at 361.

The step-four analysis consists of three phases. In the first phase, the ALJ must evaluate the claimant's RFC; in the second phase, she "must determine the physical and mental demands of the claimant's past relevant work"; and in the third phase, she must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey*, 92 F.3d at 1023. "At each of these phases, the ALJ must make specific findings." *Id.*

### 1. Prior Job Qualifies as Past Relevant Work

Plaintiff argues the ALJ erred by considering the Production Assembler job as past relevant work. Past work is defined as work that you have done "within the past 15 years, that was substantial gainful activity ["SGA"], and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). Plaintiff contends that there was no evidence to establish that the job was of sufficient duration to enable her to learn to perform the job or that it met the SGA earnings threshold. But Plaintiff's own testimony contradicts her arguments. Plaintiff testified that she performed the job for about "six months, maybe a little bit longer," and she did not testify to any difficulties learning the job. R. 43. The Production Assembler job as generally performed has an SVP of 2, which means that a person can learn how to do the job with training of "[a]nything beyond short demonstration up to and including 1 month." DOT, No. 706.687-010, 1991 WL 679074. Thus, the job as generally performed takes no more than a month to learn, and Plaintiff testified that she worked full-time at the job for at least six months. Plaintiff's argument therefore fails.

Plaintiff similarly argues that the Production Assembler job might not be considered SGA because the 2006 SGA monthly earnings threshold for non-blind individuals was $860.00 and, if Plaintiff worked at the production assembler job for nine months, her monthly payment would be under this amount. ECF No. 13 at 5. *See* Social Security, *SGA*,

8

https://www.ssa.gov/oact/cola/sga.html (last visited October 2, 2020). Plaintiff did not testify that she worked in the production assembler job for nine months; she testified that she worked full time at this job for "six months, maybe a little bit longer." R. 43. Plaintiff's arguments on appeal are conjecture and unsupported by the evidence of record.

### 2. ALJ Did Not Err in *Winfrey* Analysis

The ALJ satisfied the second step of the *Winfrey* analysis, by determining the physical and mental demands of the Production Assembler job.[4] At the hearing, Plaintiff testified that her past job at the Holland Group of Tennessee, Inc. involved working with appliances at Whirlpool on an assembly line, "setting up the machine while the cook fixed the cook stove to get it ready to go out to the public to buy." R. 42. Upon inquiry, Plaintiff further testified this job specifically called for her to "drill in the screws, put the wires in where they belong, put the metal back on it so it would be ready to be put in a box to ship it," and lifting up to 20 pounds. R. 43. The VE then testified that this past job was classified as a Production Assembler (DOT #706.687-010), and that it was unskilled, with Specific Vocational Preparation ("SVP") of two, generally light exertion, and light exertion as Plaintiff reported. R. 65, 67. The ALJ presented the VE with a hypothetical matching Plaintiff's age, education, past work, and RFC, and the VE testified she would be able to return to past work as a Production Assembler, as generally and actually performed. R. 67. Plaintiff's other past work, as a blood bank custodian (heavy, SVP 4), blood donor recruiter (light, SVP 4), nurse assistant (very heavy, SVP 4), and phlebotomist (medium, SVP 3), would be precluded because those jobs exceeded the RFC. R. 22. In the decision, the ALJ stated she concurred with the VE's testimony and concluded that, given Plaintiff's RFC and the physical and mental demands of this work, Plaintiff could perform the Production Assembler job both as actually and generally

---

[4] As discussed *supra*, the ALJ's unskilled, reduced light RFC determination is supported by substantial evidence and free of legal error, which satisfies the first prong of the *Winfrey* analysis.

9

performed. R. 23. The ALJ elicited adequate testimony and made an adequate finding supported by the record.

The ALJ also satisfied the third prong of the *Winfrey* analysis, by (1) comparing Plaintiff's Production Assembler job to her supported RFC, and (2) finding that based on testimony from the VE and "in comparing [Plaintiff's RFC] with the physical and mental demands of this work," Plaintiff was "able to perform her past relevant work as a production assembler as actually and generally performed." R. 23. Plaintiff argues that the ALJ's analysis was merely a "conclusion without weighing or pointing to the underlying evidence in the record." ECF No. 13 at 6. However, as discussed *supra*, the ALJ elicited testimony from Plaintiff about the demands of her past work as a Production Assembler as actually performed and asked the VE to identify the DOT job descriptions of each job. R. 43-44, 65. Nothing further was required. Relying on VE testimony, the ALJ found Plaintiff was capable of work as a Production Assembler as actually and generally or usually performed. R. 22, 67. The agency accepts the DOT job descriptions "as reliable evidence at step four of the functional demands and job duties of a claimant's past job as it is usually performed in the national economy." *Bowman v. Astrue*, 511 F.3d 1270, 1273 n.1 (10th Cir. 2008) (quotation and citation omitted)); *see also Andrade*, 985 F.3d at 1051-52.

To the extent Plaintiff is rearguing RFC errors here, the Court already found the ALJ's RFC supported by substantial evidence. Therefore, any arguments regarding Plaintiff's physical limitations fail. *See Grogan*, 399 F.3d at 1261 (at step four, claimant bears the burden of proving her impairments prevent her from performing past work). The ALJ satisfied her duty to make an "informed comparison between past work requirements and the claimant's functional limitations" as part of the step-four determination, and the Court finds no error. *James v. Chater*, 96 F.3d 1341, 1342 n.2 (10th Cir. 1996), *overruled on other grounds by Sims v. Apfel,* 530 U.S. 103 (2000).

### C. ALJ Did Not Err in Analyzing VE Testimony

Plaintiff argues the ALJ erred by failing to either follow or discredit the VE's testimony in response to hypothetical questions that included limitations greater than those adopted into the RFC. In particular, the ALJ queried the VE about a hypothetical person who would have a limitation to lifting five pounds frequently and ten pounds occasionally, and the VE responded that no competitive work would be available for such a person. R. 67-68.

Plaintiff's argument is without merit. There is no requirement that the ALJ exhaustively analyze the VE's testimony regarding limitations that the ALJ ultimately does not accept into the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1998) (ALJ is not required to discuss every piece of evidence). To the contrary, a VE's testimony may provide substantial evidence to support an ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical question "reflect[s] with precision all of [claimant's] impairments" and limitations that are "borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, "[a]n ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010) (citing *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990)). "By posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the hypothetical limitations." *Id.* If this were the case, then the ALJ would be precluded from posing more than one hypothetical. *See id.* at 931 n.2. Accordingly, the Court finds no error in the ALJ's analysis of VE testimony.

### D. Appointments Clause Challenge

There is no dispute that: (1) the ALJ who decided Plaintiff's case was not validly appointed under the Appointments Clause of the U.S. Constitution; and (2) Plaintiff failed to raise the legality of the ALJ's appointment at the administrative level. The disputed issue is whether Plaintiff

11

waived his Appointments Clause challenge and is therefore precluded from raising the Appointments Clause challenge before this Court. The Tenth Circuit recently decided this question, holding that a social security claimant who fails to exhaust the Appointments Clause issue before the SSA waives her right to raise that issue during judicial review of the agency decision. *See Carr v. Commissioner, SSA*, 961 F.3d 1267, 1268-1275 (10th Cir. 2020) (finding no reason to depart from general rule that issue must be raised before agency in order to seek judicial review).[5] Accordingly, Plaintiff waived his Appointments Clause challenge.

**V.     Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 13th day of October, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[5] Prior to the Tenth Circuit's decision in *Carr*, the undersigned and another judge in this district reached the opposite conclusion. *See, e.g., Daryn Lee W. v. Saul*, No. 18-CV-401-JFJ, 2019 WL 4751551 at *8 (N.D. Okla. Sept. 30, 2019); *Willie Earl C. v. Saul*, No. 18-CV-272-FHM, 2019 WL 2613819, at *5 (N.D Okla. June 26, 2019).